UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL WYNN,<br><br>    Plaintiff,<br><br>    v.<br><br>FRED FOULK, et al.,<br><br>    Defendants. | Case No. 20-cv-00181-SI<br><br>**ORDER DENYING HABEAS CORPUS PETITION**<br><br>Re: Dkt. No. 1 |

Petitioner, Samuel Wynn, filed through counsel this petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before this Court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition is **DENIED**.

**BACKGROUND**

The California Court of Appel described the events leading to Wynn's conviction as follows. In July 2015, Wynn and his half-brother—both African American—parked a white Lexus near two women standing at the corner of 18th Avenue and International Boulevard in Oakland, California, "an area known for prostitution." *People v. Wynn*, A149188, 2018 WL 3359629, at *2 (Cal. Ct. App. July 18, 2018). Wynn and his half-brother, Lewis, exited the Lexus and approached the two women, Jane Doe and Nina. *Id*. Two other men remained in the vehicle. Wynn asked Jane Doe where her "pimp" was and asserted "I'm a mother fucking pimp, and I need 'a new girl[.]'" *Id*. Doe averted eye contact and did not respond. *Id*. Meanwhile, Lewis asked Nina whether he could offer "guidance" on how the two women could prostitute themselves. *Id*. Doe overheard Lewis tell Nina he was a pimp. Receiving no reply from either Doe or Nina, Wynn and Lewis returned to their vehicle and drove away. *Id*.

Wynn and Lewis returned a short time later. *Wynn*, 2018 WL 3359629, at *3. Wynn then

> got out of the car and approached Doe. He got "real close" to Doe and said she was "about to get [her] ass in the motherfucking Lexus." He also said "if [she] would have spoke[n] to [him], [she] wouldn't have had these problems." Doe ignored [Wynn] and he got "frustrated." He grabbed Doe and forced her into the Lexus. Doe kicked and screamed—trying to get away—but [Wynn] overpowered her. He pushed Doe inside the car, and then got into the car. Lewis and two other men were in the car. [Wynn] told Doe, "'We're going to go to a hotel. You're about to suck all of our dicks, and we'll take you to the white men and make a lot of money[.]'"

*Id*. at 3. After getting Doe into the car, Wynn took her phone. At some point, Lewis obtained Doe's identification card from her purse. Despite protestations from the other two men in the car that "they should drop Doe off," Lewis waved Doe's ID around and stated, "[d]on't stop, we're not dropping this bitch off," and that Doe was "'fittin' to go hoe." *Id*. Lewis also threatened to go back to "get" the other woman was well.

Meanwhile, a woman who lived nearby noticed the commotion and called the police. *Id*. She recalled seeing men "aggressively trying to 'force' Doe into the car. Eventually one man pushed Doe—who was resisting and yelling—into the backseat. When Doe was inside the car, both men got in, and the car drove away." *Id*. As police arrived at the scene, one officer reported seeing a "man in the backseat [of the Lexus] trying to hold Doe down." *Id*. Police stopped the Lexus and detained Wynn and another man. *Id*. Wynn, Lewis, and another co-defendant were charged with two counts: (1) kidnapping to commit a sex crime, Cal. Penal Code 209(b)(1), and (2) human trafficking for commercial sex, Cal. Penal Code 236.1(b)(1).

Wynn and Lewis were tried jointly. At trial, the prosecution introduced expert testimony from Oakland Police Officer Martin Ziebarth, who testified on "Human trafficking, specifically commercial sexual exploitation, pimping and pandering qualified [sic] to discuss such things as recruitment, manipulation, roles of pimps vs. roles of prostitutes, victimology, 'rules' of the typical relationship, terminology and the overall sub-culture." Dkt. No. 19-1 at 286 (People's Motion in

2

Limine).[1] Ziebarth described the "tactic" Wynn used as "Guerilla Pimping," whereby a pimp forcibly makes a woman work as a prostitute and takes all her earnings. *Wynn*, 2018 WL 3359629, at *5. Ziebarth also explained that, customarily, prostitutes in Oakland would be instructed by their pimps to have only white or Hispanic customers, and were prohibited from making "eye contact or having a conversation with a young African American man" because young African American men were more likely to be "suspected pimps." *Id*. at 6. Lewis' attorney objected to Ziebarth's assertion that "most pimps in Oakland are Black" as improper racial profile evidence. *Id*. The court declined to strike the evidence, "observing that Ziebarth 'did not say all African Americans were pimps,'" but was instead remarking on the "rules" specific to Oakland. *Id*. Later, the prosecution would rely on Ziebarth's description of guerilla pimping to draw similarities between the tactic and Wynn's conduct against Doe. Notably, Wynn's attorney did not object to Ziebarth's testimony or its subsequent usage.

A jury found Wynn guilty of human trafficking for commercial sex (count 2) and simple kidnapping (rather than kidnapping to commit a sex crime, as originally charged in count 1). On August 11, 2016, the trial court sentenced Wynn to a term of 88 years to life in state prison. Dkt. No. 19-2 at 152 (Abstract of Judgement). On direct appeal to the California Court of Appeal, Wynn argued, among other issues, that his trial counsel was ineffective for failing to object to Ziebarth's "racial profiling" testimony. The Court of Appeal held any "[a]ssumed [e]rror" in admitting Ziebarth's testimony was harmless due to the "overwhelming" evidence of Wynn's guilt. *Wynn*, 2018 WL 3359629 at *7. In the Court of Appeal's view, any "additional effect on the jury from the allegedly improper testimony, if any, was negligible" *Id*. at *8, quoting *People v. Leonard*, 228 Cal. App. 4th 465, 494 (2014). The Court noted:

> Doe testified [Wynn] ordered her to get into the Lexus, and when she did not comply, he

---

[1] For ease of reference, page number citations refer to the EFC branded numbers in the upper right corner of the page.

> forced her into the car, pushing her as she kicked and screamed. Doe also testified she was afraid. The neighbor corroborated Doe's testimony and testified two men were "aggressively" trying to "force" Doe into the car and that the situation was not a "willing pickup." In the car, Doe begged to be released, but Lewis refused, taking Doe's identification card and her shoe, and saying, "'we're not dropping this bitch off.'" [Wynn] took Doe's cell phone, likely to prevent her from calling for help.

*Id*. at 8. The Court also found adequate evidence demonstrating Wynn's "intent to pimp or pander." *Id*. Wynn told Doe he was a pimp, and that he was going to "make a lot of money" when Doe "committed sex acts for 'white men.'" *Id*. Further, the Court noted the trial court's instruction that the jury "need not accept Ziebarth's testimony as true or correct." The Court of Appeal accordingly affirmed Wynn's conviction. The California Supreme Court subsequently denied Wynn's petition for review. He then filed this collateral action.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

A prisoner in state custody who wishes to collaterally challenge the fact or length of their confinement through a federal habeas proceeding is required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of every claim they seek to raise in a federal court. *See* 28 U.S.C. § 2254(b), (c). The parties do not dispute that the state judicial remedies were exhausted for the claims in the petition.

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in

4

custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). According to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a section 2254 petition may not be granted with respect to any claim that was adjudicated on the merits in a state court, unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

In his habeas petition, Wynn argues the Court of Appeal unreasonably applied *Strickland v. Washington,* 466 U.S. 668, 686 (1984) when concluding that his trial counsel's failure to object to Ziebarth's testimony and the prosecution's reliance on the racial remarks, even if objectively unreasonable, resulted in harmless error.

To prevail on a Sixth Amendment ineffectiveness of counsel claim under *Strickland*, a petitioner must establish two things. First, he must demonstrate that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient

5

performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The relevant inquiry under *Strickland* is not what defense counsel could have done, but rather whether his choices were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). When approaching a *Strickland* issue, it is often "easier" (and permissible) "to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" without deciding whether the alleged conduct fell below the threshold of objective reasonableness. *Strickland,* 466 U.S. at 686. To obtain habeas relief, a petitioner "must show that the state court's ruling" on the ineffectiveness of counsel claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Accordingly, relief can only issue if "there is no possibility that fairminded jurists could disagree" that the lower court erred. *Id.* at 102.

The Court finds Wynn has failed to carry AEDPA's burden. Wynn's own admission that he was a "pimp," as recited in Doe's recollection of their initial encounter, was strongly probative of his intentions. After violently forcing Doe into the vehicle, Wynn's additional remarks made in the vehicle could lead a factfinder to conclude Wynn and his co-defendants intended to force Doe into commercial sex. The eyewitness accounts from the woman who called 9-11 further illuminates the non-consensual nature of the encounter. Based on these facts, it is unlikely that Ziebarth's racial profile testimony—as problematic as it might have been—contributed to the verdict in any meaningful way. Accordingly, the Court finds the Court of Appeal decision was not "so lacking in justification" as to warrant habeas relief. *Harrington,* 562 U.S. at 103.

Wynn also argues he is entitled to relief under California's

> [n]ewly enacted section 745, passed as part of the California Racial Justice Act of 2020, [which] prohibits the state from seeking or obtaining a criminal conviction on the basis of race, and allows the defendant to prove a violation, by a preponderance of evidence, in instances when an expert testimony "used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin, whether or not purposeful.

Dkt. No. 20 at 5-6 (Petitioner's Traverse).  The Court is mindful of defendant's contention that there is systemic and enduring racial bias in the criminal justice system at both the state and federal levels. However, AEDPA's section 2254 only gives this Court authority to review violations of federal law, not claims arising under state statutory law.

## CONCLUSION

The petition for writ of habeas corpus is DENIED.  The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: December 29, 2021

_____
SUSAN ILLSTON
United States District Judge